IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 26-cv-00080-PAB

DAYAN HERNANDEZ CASTELLANO,

    Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

    Respondents.

**ORDER**

This matter comes before the Court on the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Respondents filed a response. Docket No. 11.[1]

### I. BACKGROUND

Petitioner is a 28-year-old citizen of Cuba. Docket No. 1 at 4, ¶15. The Cuban government identified petitioner as one who opposes the government and was cited or arrested on several occasions for inciting protests and was threatened with imprisonment based on his political opinion. *Id.* On or around January 14, 2024, petitioner entered the United States near Hidalgo, Texas and was apprehended by United States Customs and Border Protection ("CBP"). *Id.* at 4, ¶ 16; Docket No. 11-1 at 2, ¶ 5.[2] CBP detained petitioner, processed him for expedited removal, and referred

---

[1] Neither party requested a hearing to consider petitioner's petition.
[2] Docket No. 11-1 is the declaration of Kevin Benner, the Deportation Officer assigned "to the case of Petitioner Juan Izquierdo Navarro." Docket No. 11-1 at 1-2, ¶ 1. Although the declaration refers to the incorrect name of the petitioner, the

him to United States Citizenship and Immigration Services ("USCIS") for a credible fear interview because petitioner claimed fear of persecution if he returned to Cuba.  Docket No. 11-1 at 2, ¶ 5.  On January 18, 2024, USCIS determined that petitioner had established a credible fear of torture if returned to Cuba.  Docket No. 1 at 4, ¶ 16; Docket No. 11-1 at 2, ¶ 6.

On January 21, 2024, the Department of Homeland Security ("DHS") issued a Notice to Appear to petitioner, initiating removal proceedings pursuant to 8 U.S.C. § 1229a.  Docket No. 11-1 at 2-3, ¶ 7.  The Notice charged petitioner with being inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *Id*.  On January 22, 2024, petitioner was released on conditional parole pursuant to 8 U.S.C. § 1226 pending removal proceedings.  Docket No. 1 at 4, ¶ 16; Docket No. 11-1 at 3, ¶ 8.

On January 26, 2025, petitioner, while attending what he believed to be a party, was detained by Immigration and Customs Enforcement ("ICE") officers while they were executing a search warrant on the premises.  Docket No. 1 at 4-5, ¶ 17; Docket No. 11-1 at 3, ¶ 10.  ICE took petitioner into custody.  Docket No. 1 at 4-5, ¶ 17.  On March 25, 2024, petitioner filed an Application for Asylum, Withholding of Removal, and Protection Under the Convention Against Torture, Form I-589.  Docket No. 1 at 4, ¶ 16; Docket No. 11-1 at 3, ¶ 9.  Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado.  Docket No.1 at 3, ¶ 9.

On June 10, 2025, petitioner attended his Individual Hearing before an immigration judge with counsel and testified in support of his asylum application about

---

remaining information in the declaration appears to be consistent with the information provided by petitioner.

the persecution he suffered in Cuba.  Docket No. 1 at 5, ¶ 18; Docket No. 11-1 at 3, ¶ 11.  On June 16, 2025, the immigration judge issued an order finding that petitioner was ineligible for asylum.  Docket No. 1 at 5, ¶ 19; Docket No. 11-1 at 3, ¶ 12.  However, the immigration judge granted petitioner's application for withholding of removal to Cuba under 8 U.S.C. § 1231(b)(3), finding that petitioner had established it was more likely than not that he would be persecuted on account of his political opinion if he returned to Cuba.  *Id.*  On June 23, 2025, petitioner filed a motion to reconsider the immigration judge's order, which was denied on July 2, 2025.  Docket No. 11-1 at 3, ¶¶ 13-14.  Petitioner's removal order became administratively final on June 16, 2025.  Docket No. 1 at 9, ¶ 34; Docket No. 11-1 at 3, ¶ 15.

Since being in custody, petitioner was twice transferred from Colorado to Arizona and told he was being removed to Mexico.  Docket No. 1 at 5, ¶ 20.  On August 27, 2025, ICE served petitioner with a Notice of Removal informing him that he would be removed to Mexico.  Docket No. 11-1 at 3-4, ¶ 17.  Petitioner did not sign the Notice.  *Id.*  On August 28, 2025, ICE transferred petitioner to Florence Service Processing Center in Arizona for "staging for removal to Mexico."  *Id.* at 4, ¶ 18.  Due to "operational issues," ICE did not remove petitioner and returned petitioner to the Denver Contract Detention Facility on August 31, 2025.  *Id.*  On November 3, 2025, ICE served petitioner with a Notice of Removal informing him that he would be removed to Mexico.  *Id.*, ¶ 19.  Petitioner did not sign the Notice.  *Id.*  On November 4, 2025, ICE again transferred petitioner to Arizona for "staging for removal to Mexico."  *Id.*, ¶ 20.  On November 9, 2025, ICE transferred petitioner back to Denver after petitioner claimed fear of persecution if removed to Mexico.  *Id.*, ¶ 21.

ICE referred petitioner to USCIS for screening for asylum protection under 8 U.S.C. § 1231(b)(3).  *Id.*  On or about November 26, 2025, ICE served petitioner with a Notice of File Custody Review, which advised petitioner that "ICE will review his custody status and potential for release on an order of supervision" and "advised Petitioner of some of the criteria that ICE will consider when deciding whether to release or continue to detain him."  *Id.*, ¶ 22.  On December 1, 2025, ICE conducted a Post Order Custody Review pursuant to 8 C.F.R. § 241.4.  *Id.* at 5-6, ¶ 23.  ICE determined that petitioner did not satisfy the criteria for release because he "poses a significant risk of flight pending removal and ICE expects to receive the necessary travel documents to effectuate removal."  *Id.*  On December 2, 2025, USCIS conducted a third-country screening interview with petitioner and determined that petitioner "failed to establish that it is more likely than not that he will be persecuted or tortured in Mexico."  *Id.* at 5, ¶ 24.  On January 16, 2026, ICE "nominated petitioner for removal to Mexico."  *Id.*, ¶ 25.

On January 8, 2026, petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2441.  *See* Docket No. 1.  Petitioner brings a claim for violation of his Fifth Amendment Right to Due Process (Count One) and 8 U.S.C § 1231(a) (Count Two).  *Id.* at 8-10.

II.   ANALYSIS

    1. **Zadvydas**

In Counts One and Two, petitioner alleges that respondents violated his due process rights and the Immigration and Nationality Act ("INA"), citing *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *See id.*  In *Zadvydas*, the Supreme Court held that a noncitizen ordered removed and detained under § 1231(a)(6) cannot be indefinitely detained without violating the Fifth Amendment of the United States Constitution.  *See Zadvydas*,

533 U.S. at 701. *Zadvydas* held that a six-month period of post-removal detention is presumptively reasonable, but, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This standard does not require petitioner to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702. Rather, he simply must show that removal is not significantly likely in the reasonably foreseeable future. *Id.* at 701.

Respondents concede that petitioner has been detained for longer than the six-month presumptively reasonable period. *See* Docket No. 11 at 7. Therefore, the Court turns to whether petitioner has met his burden under *Zadvydas*. Respondents argue that petitioner has "not met his burden to provide good reason to believe there is not significant likelihood of his removal in the reasonably foreseeable future." *Id.* Petitioner contends that he is a "citizen of Cuba, a country with which the United States does not have relations and could not be removed to Cuba based on the grant of Withholding of Removal." Docket No. 1 at 9, ¶ 35.[3] Furthermore, petitioner argues that his removal to a third country is not reasonably foreseeable because respondents have twice attempted to remove petitioner to a third country and were unsuccessful. *Id.*

Petitioner's removal order has been administratively final since June 16, 2025. *Id.*, ¶ 34. In that time, respondents have been unable to effect respondent's removal. Respondents failed in August 2025 and November 2025 to deport petitioner to Mexico. *See* Docket No. 11-1 at 4, ¶¶ 18-21. Furthermore, petitioner cannot be removed to

---

[3] Respondents make no argument that petitioner's removal to Cuba is reasonably likely.

5

Cuba because an immigration judge granted petitioner's withholding of removal. *See id.* at 3, ¶ 12.

Respondents argue that petitioner cannot meet his burden to show that removal is not significantly likely because petitioner's conduct purportedly contributed to the unsuccessful removal in November 2025. *See* Docket No. 11 at 8. Specifically, respondents note that, because petitioner "claimed fear of persecution if he was removed to Mexico . . . he was transferred back to the Denver CDF and referred to USCIS for screening for eligibility protections under 8 U.S.C. § 1231(b)(3)." *Id.* at 10. Contrary to respondents' assertion, a petitioner raising a fear of persecution does not mean his "allegations are insufficient to meet his burden under *Zadvydas*." *See id.* at 8. In fact, the opposite is true. Petitioner being entitled to "notice and an opportunity to seek protection from removal" pursuant to 8 U.S.C. § 1231(b)(3) further supports that his deportation is not likely in the reasonably foreseeable future. *See Jimenez Chacon v. Lyons*, --- F. Supp. 3d ---, 2025 WL 3496702, at *8 (D.N.M. Dec. 4, 2025); *Ndandu v. Noem*, , 2026 WL 25848, at *5 (S.D. Cal. Jan. 5, 2026) ("While such proceedings [under 8 U.S.C. § 1231(b)(3)] may only delay removal, the fact that Petitioner likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future.") (internal quotation, alterations, and citation omitted). Moreover, ICE completed petitioner's third-country screening on December 2, 2025 and found that "Petitioner failed to establish that it is more likely than not that he will be persecuted or tortured in Mexico." Docket No. 11-1 at 5, ¶ 24. Thus, it has been the case since December 2, 2025 that respondents' efforts to deport petitioner are no longer being impeded by § 1231(b)(3). Yet, respondents have still been unable to

deport petitioner and have not identified any country that has agreed to accept petitioner. The only progress respondents have made in deporting petitioner is to "nominate[]" him for deportation to Mexico. *Id.*, ¶ 25. Accordingly, petitioner has satisfied his burden under *Zadvydas*. *See Ahrach v. Baltazar,* No. 25-cv-03195-PAB, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025) (finding that petitioner met her burden where petitioner had been detained for over six months and the only efforts respondents had made to remove petitioner was to solicit acceptances from other countries); *Aguilar v. Noem*, No. 25-cv-03463-NYW, 2025 WL 3514282, at *5 (D. Colo. Dec. 8, 2025) ("Because Petitioner has been granted withholding of removal to his only country of citizenship and there are no other countries currently identified that would accept him, Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.") (internal quotation and citation omitted); *Vargas v. Noem,* 2025 WL 2770679, at *2 (D. Kan. Sept. 29, 2025) ("The Court concludes that petitioner has met his burden to show that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has now been detained for nearly nine months since his removal order became final on January 4, 2025, well beyond the six-month period sanctioned by the Supreme Court in *Zadvydas*, and officials have still not been able to remove him or even to schedule his removal."); *Salazar-Martinez v. Lyons*, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (finding that petitioner met her burden where petitioner had been detained for seven months, an immigration judge had granted petitioner's withholding of removal to the country of her citizenship, and ICE failed to identify a country that has agreed to accept petitioner).

Turning to respondents' burden under *Zadvydas*, respondents argue that they have presented evidence sufficient to rebut petitioner's showing because they have

"nominated petitioner for removal to Mexico" and have "successfully executed removals of Cubans to Mexico."  See Docket No. 11 at 9-10.  Respondents represent that "ICE believes that he will be accepted for removal and can effectuate his removal in the reasonably foreseeable future."  Id. at 9.  While ICE Officer Kevin Benner states that the "nomination process involves providing background information on Petitioner to the Mexican government and going through the diplomatic process with the Mexican government," Mr. Benner does not indicate whether respondents have done so and, if they have, whether Mexico has acknowledged the request for petitioner's removal.  See Docket No. 11-1 at 5, ¶ 25.  Mr. Benner's assertion that petitioner can likely be removed "as soon as two days or within approximately a couple of weeks of the Mexican government accepting him for removal" does not indicate when the Mexican government is likely to accept, or even acknowledge, respondents' request for petitioner's deportation.  See id., ¶ 26.  Thus, Mr. Benner's unsubstantiated assertion that ICE has "began the process of preparing Petitioner for removal" is insufficient to satisfy the government's burden.  See id., ¶ 25; Aguilar, 2025 WL 3514282, at *6 ("Respondents' bare assertions that ICE is pursuing third country removal options are insufficient to meet Respondents' burden to put forth evidence sufficient to rebut Petitioner's showing") (internal quotation and alteration omitted); Chennah v. Baltazar, No. 26-cv-00112-CNS, 2026 WL 179951, at *3 (D. Colo. Jan. 23, 2026) ("Numerous courts have persuasively rejected . . . equivocated, conclusory justifications for continued detention, and based on the current record the Court joins them in rejecting Respondents' infirm justification for Petitioner's continued detention here."); Gonzalez Gutierrez v. Carter, --- F. Supp. 3d ---, 2025 WL 3454295, at *3 (D. Kan. Dec. 2, 2025) ("respondents have not been able to provide evidence or even point to any specific fact

that creates a significant likelihood that, even though officials have failed in their undescribed 'attempts' to remove petitioner to a third country, and even though they have seemingly made no additional efforts regarding other countries . . . petitioner will nonetheless be removed to a third country in the reasonably foreseeable future"). The fact that "ICE has successfully executed removals of Cubans to Mexico" does not show that petitioner's removal is significantly likely in the reasonably foreseeable future. *See* Docket No. 11-1 at 5, ¶ 26. Respondents do not explain why they believe petitioner is similarly situated to other Cubans who have been removed to Mexico and thus provide no basis to believe that petitioner's removal is likely. *See Fadwa v. Lyons*, No. 25-cv-03660-PAB, 2025 WL 3525026, at *6 (D. Colo. Dec. 9, 2025) ("ICE does state that it successfully removed multiple Palestinians in this manner in Fiscal Year 2025, but it does not provide any details as to how those removals occurred or give any reason to believe that Mr. Fadwa is similarly situated."). Accordingly, respondents fail to rebut petitioner's showing as to the likelihood of his removal.

In the alternative to denying the petition, respondents ask the Court grant them leave to submit a status report within 30 days "concerning their ongoing efforts to remove Petitioner to a third country." Docket No. 11 at 9. Because "respondents provide no reason to believe [petitioner's] removal would be any closer in another thirty days," the Court will deny that request. *See Ahrach*, 2025 WL 3227529, at *5.

The Court finds that respondents have detained petitioner in violation of the Fifth Amendment and 8 U.S.C § 1231(a) and will order that petitioner be released from custody pursuant to 28 U.S.C. § 2241(c)(3).

### 2. Additional Relief

Besides release from detention, petitioner seeks the following relief:

9

1. Assume jurisdiction over this matter;
2. Declare that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a);
3. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and
4. Grant any further relief this Court deems just and proper.

Docket No. 1 at 10. Regarding petitioner's second claim for relief, a "declaratory relief claim is moot if the relief would not affect the behavior of the defendant toward the plaintiff." *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (citation omitted). However, such claims are not moot if "(1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation and citations omitted). A declaration that petitioner's detention was unlawful would not affect respondents' behavior toward petitioner now that he has been ordered released, and the Court does not find, and petitioner does not argue, that any of the mootness exceptions apply. *See Vaupel v. Ortiz*, 244 F. App'x 892, 896 (10th Cir. 2007) (unpublished) (holding that petitioner's declaratory claims for relief were moot after petitioner's release and deportation, declining "to issue an advisory opinion regarding the legality of [petitioner's] detention, because a declaratory judgment on that question would have no meaningful effect on the Department of Homeland Security's future conduct towards him") (internal quotation, alteration, and citation omitted); *A.N.M.L. v. Garland*, 2021 WL 1853577, at *2 (S.D. Cal. May 10, 2021) (finding that petitioner's request for a declaration that her detention violated the law was moot upon petitioner's release from DHS custody).

As for petitioner's request for attorney's fees, the Court will not consider the request because petitioner fails to comply with the Local Rules of the District of Colorado. A motion for attorney's fees must be filed in accordance with D.C.COLO.LCivR 54.3. *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").

### III. CONCLUSION

Therefore, it is

**ORDERED** that petitioner the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] is **GRANTED**. It is further

**ORDERED** that respondents shall release petitioner Dayan Hernandez Castellano from custody within 48 hours. It is further

**ORDERED** that respondents shall file a status report within 24 hours of petitioner's release.

DATED February 19, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge